UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL D. PIERCE,

                                Plaintiff,

                                                        7:05-CV-1477
v.                                                      (GHL)

NEW YORK STATE POLICE (TROOP D
LOWVILLE), WILLIAM C. CROSS, KURT
W. LAVALLEY, TODD A. GALARNEAU,
RICHARD A. KNIGHT, LEWIS COUNTY
SHERIFF L. MICHAEL TABOLT, RICKEY
E. CRAFT,

                                Defendants.
_____

APPEARANCES:                                           OF COUNSEL:

GOETTEL, POPLASKI & DUNN PLLC                           JASON F. POPLASKI, ESQ.
Counsel for Plaintiff
120 Washington Street, Suite 320
Watertown, NY 13601

SMITH, SOVIK, KENDRICK & SUGNET, P.C.                   ROBERT P. CAHALAN, ESQ.
Counsel for Defendants Lewis County Sheriff's
        Department, Tabolt, Galarneau, Knight,
        and LaValley
250 S. Clinton Street, Suite 600
Syracuse, NY 13202

HON. ERIC T. SCHNEIDERMAN                               DAVID B. ROBERTS, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>MEMORANDUM DECISION AND ORDER</u>[1]

In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff Michael Pierce contends that Lewis County and New York State officers wrongfully entered his home, beat him, arrested him, searched his bedroom, and denied him medical care.  Currently pending before the Court are motions by Defendants Richard Knight, Todd Galarneau, Kurt LaValley, Michael Tabolt, and the Lewis County Sheriff's Department ("County Defendants") and Defendants William C. Cross and Ricky E. Craft ("State Defendants") for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. Nos. 131 and 132.)  Plaintiff has opposed the motions.  (Dkt. Nos. 136-139.)  For the reasons that follow, Defendants' motions are granted in part and denied in part.

## I.    FACTUAL HISTORY

On the evening of August 2, 2005, at about 9:45 p.m., Defendant Lewis County Sheriff's Deputy Todd A. Galarneau received a call from the father of a seventeen year old boy, reporting that the boy had been the victim of a sexual assault earlier that day.  (Dkt. No. 131-2 ¶ 16.)  Just after the telephone conversation, the boy and his parents came to the Lewis County Sheriff's Department to make a formal complaint.  *Id*.

At the station, the boy provided a supporting deposition.  *Id*.  He stated that on August 2, 2005, he had been working for a contractor measuring and documenting insect infestation in a corn field.  *Id*. ¶ 17.  A man walked into the field to see what the boy was doing.  *Id*.  While they were alone in the field, the man asked the boy whether he wanted "to have some fun."  *Id*.  When the boy asked the man what he meant, the man stepped toward him and grabbed the crotch of the

---

[1]        This matter is before the Court by consent of both parties.  (Dkt. No. 127.)

boy's jeans, pushing his hand against the boy's penis.  *Id*.  The man then tried to unbutton the top

of the boy's jeans.  *Id*.  The boy jumped away, telling the man not to touch him and to stay away

from him.  *Id*.  The man said "I just wanna see, seeing never hurt," and stepped toward the boy.

*Id*.  The boy turned and started running.  *Id*.  The man grabbed him by the back of his shirt, but

lost his grip.  *Id*.  The boy ran to his car and drove away.  *Id*.

The boy described the man as being 5'8" tall, approximately 50 years old, with metal

splints affixed to two of his fingers with tape.  *Id*. ¶ 18.  Defendant Galarneau knew that the boy's

description fit Plaintiff, who was a registered level three sex offender who lived in the area of the

corn field.  *Id*. ¶ 19.  Defendant Galarneau showed the boy an archival photograph of Plaintiff.

*Id*. ¶ 20.  The boy recognized Plaintiff as the man who had assaulted earlier in the day.  *Id*.

Defendant Galarneau notified Defendant Sergeant Richard A. Knight of the complaint

and investigation.  *Id*. ¶ 21.  Defendant Knight ran a criminal history report on Plaintiff.  *Id*.  The

criminal history report confirmed that Plaintiff was a registered sex offender who had been

arrested on two prior violent sexual felony charges.  *Id*. ¶ 22.  The criminal history report also

indicated that Plaintiff had a non-sexual felony arrest history for burglary and a history of

resisting arrest, intentionally damaging property, and aggravated harassment.  *Id*. ¶ 23.  He had

served more than ten years in prison.[2]  *Id*.

Defendants Galarneau and Knight "determined that they would attempt to interview

_____

[2]       In his opposition to the motions for summary judgment, Plaintiff purports to deny
these facts.  Plaintiff states, in full, that he "denies that he committed a sexual assault at any point
or time that is at issue in this matter."  (Dkt. No. 138 ¶¶ 16-23.)  Plaintiff's "denial" does not raise
a dispute of material fact on any relevant issue.  It is immaterial whether or not Plaintiff
committed the crime.  As discussed below, the relevant inquiries are what information
Defendants received before going to Plaintiff's home and whether Plaintiff pleaded guilty.
Plaintiff's "denial" does not dispute Defendants' version of these relevant facts.

[Plaintiff] and ascertain if he was wearing finger splints" as the boy had described.  (Dkt. No. 131-2 ¶ 24.)  Further, because Plaintiff had a "violent criminal history, [Defendant] Deputy LaValley was called back in and the New York State Police was contacted for back-up if necessary."  *Id*. ¶ 25.

Plaintiff alleges that Defendants arrived at his house at 12:30 a.m.  (Dkt. No. 104 at 15.) Defendants do not state what time it was.  Therefore, it is undisputed that the following events occurred after midnight.

The parties' accounts of what happened next vary widely.  Defendants contend that upon arrival at Plaintiff's house, Defendants Knight and Galarneau went to the side door and knocked.  (Dkt. No. 131-2 ¶ 26.)  Defendants Craft, Cross, and LaValley remained outside.  *Id*. ¶ 27.  When Plaintiff's mother answered the door, Defendant Knight "asked her if we could come in and speak to her son . . . . The plaintiff's mother told us to go ahead and she let us into the house . . . . She yelled up to her son, but he did not answer.  She then directed us up the stairs and told us that his room was to the left and then all the way to the front of the house."  (Knight Decl., Dkt. No. 131-5 ¶¶ 31-34.)  Plaintiff's mother "stated that she was in poor health and could not climb the stairs herself to get him."  (Galarneau Decl., Dkt. No. 131-4 ¶ 28.)

Plaintiff contends, citing only his verified complaint, that Defendants Galarneau, Knight, Craft, Cross, and LaValley all "barged into" his house at the same time and "bullied their way past [P]laintiff's elderly mother."  (Dkt. No. 138 ¶¶ 26-28, 30.)

Defendants contend that they entered Plaintiff's room, saw that he had splints on his fingers, and began to question Plaintiff about the boy.  (Dkt. No. 131-2 ¶¶ 31-33.)  Plaintiff became agitated, raised his voice, and did not comply when he was instructed to turn around and

put his hands behind his back.  *Id*. ¶¶ 34-36.  Defendants contend that Plaintiff "resisted arrest so pepper spray was used."  *Id*. ¶ 36.  Defendant LaValley heard raised voices through the open bedroom window and heard that pepper spray was going to be used, so he and Defendants Cross and Craft "entered the house to render assistance."  *Id*. ¶ 37.  Defendants contend that "[w]hen LaValley, Cross, and Craft arrived at [Plaintiff]'s bedroom, pepper spray had been applied, and [Plaintiff] was on his feet, in the grasp of Deputy Galarneau, resisting his effort to pull his hands behind his back and place them in cuffs.  During the struggle to put handcuffs on [Plaintiff], Deputy Galarneau and Trooper Cross fell to the floor on top of him."  *Id*. ¶ 38.  Defendant LaValley then "assisted by helping Trooper Cross handcuff [P]laintiff."  *Id*. ¶ 39.

Plaintiff denies that he resisted Defendants.  (Dkt. No. 138 ¶¶ 33-34.)  Plaintiff declares that when Defendant LaValley entered the bedroom, he grabbed both of Plaintiff's arms "and restrained them behind his back, causing great pain."  (Dkt. No. 137 ¶ 8.)  While Defendant LaValley restrained Plaintiff, Defendant Knight "stood in front of him, held a flashlight directly into his face, and questioned him.  During the questioning, Knight called [Plaintiff] a liar, . . . closed his fist, and punched [Plaintiff] in the abdomen."  *Id*. ¶¶ 9-10.

Defendant Galarneau began to question Plaintiff.  *Id*. ¶ 13.  Plaintiff responded by asking Defendants if they had a warrant and telling them they should leave if they did not.  *Id*. ¶ 14.  Defendant Knight then punched Plaintiff again in the abdomen with a closed fist.  *Id*. ¶ 15.  Defendant Galarneau said "We do not need a fucking warrant," and punched Plaintiff in the ribs.  *Id*. ¶ 17.  Plaintiff could hear and feel his ribs break.  *Id*. ¶ 18.

During these events, Defendant Cross "stood by but did not intervene, did not restrain his fellow officers, or assist" Plaintiff.  *Id*. ¶ 21.  Although Plaintiff was not resisting, Defendant

5

Cross said that he had "better quit resisting us and tell us what we want to know or I will teach you a lesson about resisting us." *Id*. ¶ 19.  Defendant Craft "removed his can of pepper spray and sprayed [Plaintiff] while he held the can directly upon his face." *Id*. ¶ 22.[3]  Observing this, Defendant Cross said "That's not enough, do it again." *Id*. ¶ 23.  Defendant Craft "again held his pepper spray against [Plaintiff]'s face" and discharged it. *Id*. ¶ 24.  Defendant Cross told Defendant Craft to do it a third time, and Defendant Craft did. *Id*. ¶¶ 25-26.  Defendant Craft then punched Plaintiff with a closed fist in the area of his left kidney. *Id*. ¶ 27.  Defendant LaValley, who still had Plaintiff restrained, slammed Plaintiff's head into his dresser. *Id*. ¶ 29.  Defendant Knight drove his elbow into Plaintiff's back, driving Plaintiff to the floor. *Id*. ¶ 30.  He then kicked Plaintiff in the buttocks, picked him up off the floor, grabbed his hands behind his back, and handcuffed him so hard that the cuffs cut off circulation to Plaintiff's left wrist. *Id*. ¶¶ 31-34.

Plaintiff declares that Defendants LaValley, Galarneau, Cross, and Craft searched his bedroom.  (Dkt. No. 137 ¶¶ 35-38.)  Defendants contend that they did so after "Plaintiff and his mother consented verbally to the search . . . " (Dkt. No. 131-2 ¶ 40.)

Neither Defendants' statement of material facts nor the evidence filed supporting the statement includes any facts about what happened after the initial encounter between Plaintiff and the officers in Plaintiff's bedroom.  (Dkt. No. 131-2.)  Therefore, Plaintiff's version of events is undisputed.  Plaintiff declares that Defendant Knight forcibly escorted him out of the house and into the rear passenger seat of the Sheriff's marked vehicle.  (Dkt. No. 137 ¶ 39.)  Plaintiff

---

[3]     The complaint's version of events reverses the identities of Defendants Cross and Craft, stating that Craft stood by without intervening and that Cross used the pepper spray.  (Dkt. No. 104 at 7.)

told Defendant Knight that his face was burning because of the pepper spray.  *Id*. ¶ 41.

Defendant Knight told Plaintiff that he would "put his face through that glass"  if Plaintiff

touched the glass divider between the front and rear seats.  *Id*. ¶ 42.  When Plaintiff told

Defendant Knight that his handcuffs were too tight, Defendant Knight shook them violently and

tightened them.  *Id*. ¶¶ 43-44.  When Plaintiff told Defendant Knight that he could not breathe,

Defendant Knight told him to "tough it out."  *Id*. ¶ 46.

Plaintiff was transported to the Lewis County Sheriff's Department.  (Dkt. No. 137 ¶ 47.)

He sat on a wooden bench in severe pain and had difficulty breathing.  *Id*. ¶ 48.  Defendant

Galarneau "continually harassed and threatened" Plaintiff, "but offered no assistance with respect

to his physical condition."  *Id*. ¶ 49.  When Plaintiff asked to see a doctor, Defendant Knight said

"We are not going to spend any money on shit like you."  *Id*. ¶¶ 51-52.  Defendant Galarneau said

"that another inmate would be able to tend to him medically instead of a doctor or physician."  *Id*.

¶ 53.

An hour and a half later, Plaintiff was transported to court for his arraignment.  (Dkt. No.

137 ¶ 54.)  Plaintiff told the judge what had happened.  *Id.* ¶ 55.  Defendant LaValley told the

judge that Plaintiff "was not going to a hospital, he was going to jail."  *Id*. ¶ 56.  Instead, the

judge "called for an ambulance to provide medical care to" Plaintiff.  *Id*. ¶ 57.  Upon arriving, the

ambulance provided Plaintiff with oxygen and transported Plaintiff to Lewis County General

Hospital.  *Id*. ¶¶ 58-59.  At the hospital, a nurse washed the pepper spray residue off of Plaintiff's

face.  *Id*. ¶ 60.  Plaintiff was diagnosed with broken ribs, a bruised and bleeding left lung, a

ruptured spleen, and damage to his kidney and his liver.  *Id*. ¶ 61.  Plaintiff was taken

immediately to the emergency room to address the spleen injury.  *Id*. ¶ 62.  Plaintiff remained in

the hospital for eight days, six of which were spent in the intensive care unit.  *Id*. ¶¶ 63-64.

On February 3, 2006, Plaintiff pleaded guilty to one count of attempted sexual abuse in the first degree, arising from an encounter with a 17-year-old boy on August 2, 2005.  (Dkt. No. 131-3 at 10.)  The plea included a waiver of appeal.[4]  *Id.* at 9.

## II.   PROCEDURAL SUMMARY

Plaintiff, proceeding *pro se*, filed the original complaint in this action on November 28, 2005.  (Dkt. No. 1.)  He filed the operative complaint on December 31, 2008.  (Dkt. No. 104.)

The operative complaint is a notarized twenty-nine page handwritten document.  (Dkt. No. 104.)  It contains a jurisdictional statement, a list of parties, an eleven-page statement of facts, twelve causes of action, and a prayer for relief.  *Id*.  Plaintiff claims that Defendants committed "hate crime assault" and violated the Fourth Amendment, the Eighth Amendment, the "Fourteenth Amendment Right [to] equal protection of the laws." *Id*. at 15-22.

On December 29, 2009, Jason F. Poplaski, Esq., was appointed as counsel for Plaintiff "for the purposes of trial only."  (Dkt. No. 119.)  Mr. Poplaski filed a Notice of Appearance on January 6, 2010.  (Dkt. No. 120.)  On October 20, 2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Dkt. No. 127.)  Trial is scheduled for April 18,

---

[4]        State Defendants request that the Court take judicial notice of the transcript of Plaintiff's plea hearing in Lewis County Supreme Court.  (Dkt. No. 132-1 at 5.) Judicial notice is appropriate, and I grant Defendants' request.  *Davis v. Cotov*, 214 F. Supp. 2d 310, 315 (E.D.N.Y. 2002) (taking judicial notice of the fact that Plaintiff pleaded guilty to a parole violation); *Marshall v. City of New York*, No. _____, 2010 U.S. Dist. LEXIS ____, at *___, 2010 WL 4739810, at *2 n.1 (S.D.N.Y. ____, 2010) (taking judicial notice of state court guilty plea in context of subsequent § 1983 false arrest action); *Rodriguez v. Patterson*, No. 04 civ. 25 (MRK), 2006 WL 1272620, at *2 (D. Conn. Apr. 5, 2006) (taking judicial notice that the plaintiff pleaded guilty to two separate counts).

2011.  (Feb. 1, 2011, Text Order.)

## III.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[5] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[5]    A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson*, 477 U.S. at 248.

9

**B.**     **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

10

shown -- that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## IV.   ANALYSIS

### A.   Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights. (Dkt. No. 104 at 16–20.) Defendants argue that the complaint fails to state an Eighth Amendment claim. (Dkt. No. 131-3 at 5-6; Dkt. No. 132-1 at 20.)

Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the Eighth Amendment. (Dkt. No. 136.) A party's failure to oppose a portion of a motion requesting dismissal constitutes consent to the unopposed argument. *Burns v. Trombly*, 624 F. Supp. 2d 185, 197 (N.D.N.Y. 2008). In such circumstances, the moving party's burden is "modest" and the party will prevail so long as the argument is "facially meritorious." *Id*. at 197-98.

Defendants have met their burden. The Eighth Amendment only applies to convicted

prisoners.  *Graham v. Connor,* 490 U.S. 386, 392 n.6 (1989); *Bell v. Wolfish*, 441 U.S. 520, 535

n.16 (1979).  Plaintiff was not a convicted prisoner at the time of the incident giving rise to this

lawsuit.  Therefore, I grant Defendants' motions for summary judgment and dismiss Plaintiff's

Eighth Amendment claims.

**B.      Equal Protection Claims**

Plaintiff claims that Defendants violated his rights under the Equal Protection Clause.

(Dkt. No. 104 at 15-22.)  Defendants argue that the complaint fails to state an equal protection

claim.  (Dkt. No. 131-3 at 8; Dkt. No. 132-1 at 20-21.)  Plaintiff's opposition to the motions for

summary judgment does not assert any arguments regarding the Equal Protection Clause.  (Dkt.

No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially

meritorious.  The Equal Protection Clause provides that "no State shall . . . deny to any person

within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This is

"essentially a direction that all persons similarly situated should be treated alike."  *City of

Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause "bars

the government from selective adverse treatment of individuals compared with other similarly

situated individuals if 'such selective treatment was based on impermissible considerations such

as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

bad faith intent to injure a person.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)

(emphasis omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Governmental action may also violate the Equal Protection Clause where the defendants

intentionally treat the plaintiff "differently from others with no rational basis for the difference in

12

treatment." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Here, Plaintiff does not assert that he is a member of a suspect class.  Nor does he assert that Defendants inhibited or punished his exercise of a fundamental right.[6]  Plaintiff's equal protection claim is thus properly classified as a "class-of-one" claim, alleging that Defendants acted either out of malice or irrationally and arbitrarily.

It is extremely difficult for class-of-one plaintiffs to allege facts plausibly suggesting that they were treated differently from similarly situated individuals.  "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006.)

Here, Plaintiff has not asserted that he was treated differently from any similarly situated individual.  (Dkt. No. 104.)  He has not even alleged cursorily that other individuals were treated differently than he was, much less shown an "extremely high degree of similarity" between himself and some other person.  Therefore, I grant Defendants' motions for summary judgment

---

[6]      The fundamental rights as identified by the United States Supreme Court fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process (which includes the right to counsel and the right of access to the courts); (5) the right to procedural due process; and (6) the right to privacy "which includes various forms of freedom of choice in matters relating to the individual's personal life" such as freedom of choice in marital decisions, child bearing, and child rearing. 2 Ronald D. Rotunda & John E. Nowak, <u>Treatise On Constitutional Law Substance and Procedure,</u> § 15.7 (4th ed. 2010).

and dismiss Plaintiff's equal protection claim.

### C.   "Hate Crime" Claims

Plaintiff alleges that Defendants committed "hate crime assaults" against him.  (Dkt. No. 104 at 16-18, 20.)  Defendants argue that the complaint fails to state a hate crime claim.  (Dkt. No. 131-3 at 8 n.4; Dkt. No. 132-1 at 20.)  Plaintiff's opposition to the motions for summary judgment does not assert any arguments regarding the hate crime claims.  (Dkt. No. 136.)

Defendants have met their burden of showing that their unopposed argument is facially meritorious.  New York's hate crime law, Penal Law § 485.05, is a criminal statute that prohibits the commission of offenses based on "a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person . . . ."  Here, the complaint does not allege that Plaintiff is a member of any protected group or that Defendants believed he was.  (Dkt. No. 104.)  Moreover, even if the complaint did include such an allegation, violations of New York's hate crime law do not give rise to constitutional claims that are cognizable under § 1983.  *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009).

Further, although the Second Circuit has not yet addressed the issue, district courts have held that the federal criminal hate crime statute, 18 U.S.C. § 249(a), does not create a private right of action.  *Wolfe v. Beard,* No. 10-2566, 2011 U.S. Dist. LEXIS 15339, at *10, 2011 WL 601632, at *3 (E.D. Pa. Feb. 15, 2011);  *Lorenz v. Managing Director, St. Luke's Hospital*, No. 09 Civ. 8898 (DAB) (JCF), 2010 U.S. Dist. LEXIS 127746, at *20-21, 2010 WL 4922267, at *8 (S.D.N.Y. Nov. 5, 2010); *Lee v. Lewis*, No. 2:10-CV-55-F, 2010 U.S. Dist. LEXIS 129816, at *5-6, 2010 WL 5125327, at *2 (E.D.N.C. Oct. 28, 2010).  In the absence of any briefing from

14

Plaintiff on this issue, I grant Defendants' motions for summary judgment and dismiss Plaintiff's hate crime claims.

### D.      Unreasonable Entry Claim

Plaintiff alleges that Defendants violated his Fourth Amendment rights when they entered his home after midnight without a warrant.  (Dkt. No. 104 at 14-15.)  Defendants move for summary judgment of this claim, arguing that the undisputed facts show that Plaintiff's mother consented to Defendants' entry.  (Dkt. No. 131-3 at 19.)  Defendants are correct.

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."  *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

Here, as discussed above, the undisputed facts show that Plaintiff's mother consented to Defendants entering the home.  Although Plaintiff asserts that Defendants barged into the house and bullied his mother, he has not presented any admissible evidence supporting that assertion. Plaintiff relies entirely on his verified complaint.  (Dkt. No. 138 ¶ 26.)  A verified pleading "has the effect of an affidavit and may be relied on to oppose summary judgment," but only where "it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief . . . ."  *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F.2d 1147 (2d Cir. 1993).  Here, Plaintiff admits that he was upstairs when Defendants entered the home.  (Dkt. No. 138 ¶ 31.)  He does not set forth any basis of personal knowledge for his assertion that Defendants entered without

consent.  Plaintiff has not provided an affidavit from his mother[7], the only person other than

Defendants with personal knowledge.  Therefore, the only admissible facts before the Court are

that Plaintiff's mother let the officers into the house and directed them to Plaintiff's room.

Plaintiff argues that the "allegations relating to the entry are absolutely disputed.

[Plaintiff] contends the police entry into his home was not consensual.  He [went] so far as to

request a warrant and ask the police to leave."  (Dkt. No. 136 at 2.)  Although he does not cite

any authority, Plaintiff may be relying on *Georgia v. Randolph.*  In that case, the Supreme Court

held that police may not enter a home on a "consent" theory when one co-tenant consents and

another co-tenant simultaneously objects.  *Georgia*, 547 U.S. at 121.  However, the Court stated

that its holding was quite narrow and acknowledged that "we are drawing a fine line; if a

potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's

permission does not suffice for a reasonable search, whereas the potential objector, nearby but

not invited to take part in the colloquy, loses out."  *Id*.  The fact that Plaintiff asked Defendants to

leave when they entered his bedroom without a warrant is, thus, immaterial to the issue of

consent because he was not "in fact at the door."  Therefore, I grant Defendants' motions for

summary judgment of Plaintiff's Fourth Amendment claim regarding Defendants' warrantless

entry into his home.

### E.     False Arrest Claims

Plaintiff claims that Defendants violated his Fourth Amendment rights when they arrested

---

[7]      Plaintiff characterizes his mother as being "elderly" in August 2005.  (Dkt. No.
137 ¶ 3.)  The record suggests that Plaintiff's mother was ill at the time of Plaintiff's guilty plea in
2006. (Dkt. No. 131-3 at 34-35.)  However, Plaintiff has not advanced any explanation, such as
ill health or death, for the absence of a declaration from his mother.

him.  (Dkt. No. 104 at 15, 20-21.)  Defendants move for summary judgment of this claim,

arguing that (1) Plaintiff's guilty plea bars the claim; and (2) Defendants had probable cause to

arrest Plaintiff.  (Dkt. No. 131-3 at 9; Dkt. No. 132-1 at 5.)

      1.     <u>Guilty Plea</u>

The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the

same as those for a false arrest claim under New York law.  *Kraft v. City of New York*, 696 F.

Supp. 2d 403, (S.D.N.Y. 2010).  "To state a claim for false arrest under New York law, a

plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was

conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the

confinement was not otherwise privileged."  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir.

2003) (punctuation and citation omitted).  Where an officer has probable cause to arrest a

plaintiff, the confinement is privileged.  *Id*. at 76.  The burden of showing that there was probable

cause for the arrest is on the officer.  *Id*.

Defendants argue that Plaintiff's guilty plea bars his false arrest claim.  (Dkt. No. 131-3 at

9; Dkt. No. 132-1 at 5.)  As Defendants correctly note, entry of a guilty plea "operates as a

defense to a Section 1983 action for arrest without probable cause."  *Roundtree v. City of New*

*York*, 778 F. Supp. 614, 619 (E.D.N.Y. 1991).  Plaintiff does not dispute that this is the state of

the law.  Rather, Plaintiff "denies the related criminal matter was resolved by a guilty plea.  He

claims the case is still unresolved on appeal."  (Dkt. No. 136 at 2.)

Plaintiff has not raised a triable issue of fact on this issue.  In opposition to the motions

for summary judgment, Plaintiff declares that "he never pleaded guilty as a matter of law in the

related criminal matter," that he "exhausted his direct appeal rights," and that he filed a petition

for writ of habeas corpus "in New York state court and that matter is currently before the New

York State Supreme Court Appellate Division, Fourth Department and is scheduled for oral

argument on April 22, 2011."  (Dkt. No. 137 ¶¶ 65-67.)  Other than his own declaration, Plaintiff

has not provided the Court with any evidence regarding his guilty plea, appeal, and habeas

petition.  Plaintiff has not requested judicial notice of any documents.  According to the court

calendar on the Fourth Department's web site, the court's April Term closes on Friday, April 15,

2011, and the May Term does not begin until Monday, May 16, 2011.  New York State United

Court System, Appellate Division, Fourth Department, http://www.courts.state.ny.us/ad4

(Calendar/Terms of Court) (Last visited March 30, 2011).  It thus does not appear that any cases

are scheduled for oral argument before the Fourth Department on April 22, 2011.  Accordingly, I

find that the undisputed facts show that Plaintiff pleaded guilty to one count of attempted sexual

assault in the first degree.

    As the State Defendants note, "[p]erhaps Plaintiff's denial of his 'guilty' plea is based on

an unarticulated argument that he initially [was] charged with Sexual Abuse in the First Degree

and Resisting Arrest, but he pled guilty to Attempted Sexual Abuse in the First Degree."  (Dkt.

No. 141 at 5.)  If Plaintiff is indeed implicitly making such an argument, it is without merit.  "[A]

plea of guilty to a charge lesser than that for which plaintiff was arrested also bars a Section 1983

action for arrest without probable cause."  *Roundtree*, 778 F. Supp. at 619.

    The undisputed facts establish that Plaintiff pleaded guilty to one count of attempted

sexual abuse in the third degree.  Therefore, I grant Defendants' motions for summary judgment

of Plaintiff's false arrest claim.

2.     Probable Cause

Defendants argue that they would be entitled to summary judgment of Plaintiff's false arrest claim even if Plaintiff had not pleaded guilty because the undisputed facts show that Defendants had probable cause to arrest Plaintiff.  (Dkt. No. 132-1 at 7-17.)

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks and citation omitted).  "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

Plaintiff was charged with, *inter alia*, sexual abuse in the first degree.  (Dkt. No. 131-4 at 17.)  Under New York law, a person is guilty of this crime "when he or she subjects another person to sexual contact . . . by forcible compulsion."  N.Y. Penal Law § 130.65(1) (McKinney 2004).  Sexual contact includes "any touching of the sexual . . . parts of a person . . . for the purpose of gratifying sexual desire . . . includ[ing] the touching of . . . the victim by the actor, whether directly or through clothing."  N.Y. Penal Law § 130.00(3) (McKinney 2004.)

The boy provided a sworn supporting deposition that a man about 5'8" tall with brownish colored mid length hair and metal splints on two fingers asked him if he "want[ed] to have some fun" and then grabbed the crotch of his jeans.  (Dkt. No. 131-4 at 19-20.)  The boy also swore that he "was shown a picture by Deputy Galarneau [and] the picture of the person was definately

19

(sic) the person who attacked me in the cornfield."  *Id*. at 20.  Defendant Galarneau declares that

the picture was of Plaintiff.  (Dkt. No. 131-4 ¶ 20.)  The boy's statement provided the officers

with probable cause.

Plaintiff argues, without citation to any evidence, that he "denie[s] the criminal conduct

happened and questions the facts that drew the Defendants' attention to him."  (Dkt. No. 136 at

2.)  Plaintiff 's denial that he committed the crime does not raise a triable issue of fact that

Defendants lacked probable cause to believe that he had.  Therefore, even if Plaintiff had not

pleaded guilty, I would grant Defendants' motions for summary judgment and dismiss Plaintiff's

false arrest claim.

### F.      Unreasonable Search Claims

Plaintiff's first cause of action is labeled "unreasonable search."  (Dkt. No. 104 at 15.)

Plaintiff alleges that while Defendant Knight held him in the police car, the other Defendants

searched his bedroom for "about an hour."  *Id*. at 19.  Construed liberally, these allegations could

constitute a Fourth Amendment unreasonable search claim.  Defendants move for summary

judgment dismissing this claim.  (Dkt. No. 131-3 at 9; Dkt. No. 132-1 at 5-7.)  Plaintiff's

opposition brief does not address this argument.

"In order to recover compensatory damages [based on an allegedly unreasonable search],

the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him

actual, compensable injury, which . . . does *not* encompass the 'injury' of being convicted and

imprisoned."  *Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994) (emphasis in original).  Here,

Plaintiff declares that "Defendants destroyed much of Mr. Pierce's property and belongings while

the Defendants detained Mr. Pierce in handcuffs."  (Dkt. No. 137 ¶ 69.)  In reply, the State

Defendants assert that Plaintiff's declaration is too conclusory to raise a triable issue of fact. (Dkt. No. 141 at 7.)  I find that Plaintiff's declaration is, just barely, enough to raise a triable issue of fact.  Therefore, Defendants' motions for summary judgment are denied as to Plaintiff's claim that the post-arrest search of his bedroom was unreasonable.

### G.    Excessive Force Claims

Plaintiff claims that Defendants used excessive force.  (Dkt. No. 104 at 15-21.) Defendants concede that these claims should proceed to trial.  (Dkt. No. 131 at 2; Dkt. No. 132-1 at 2-3.)  Trial will begin on April 18, 2011.

### H.    Medical Care Claims

Plaintiff claims that Defendants Knight and Galarneau were deliberately indifferent to his serious medical needs.  (Dkt. No. 104 at 19, 22.)

Before conviction, a plaintiff's claim that defendants were deliberately indifferent to his serious medical needs is governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (holding that deliberate indifference standard applies to pretrial detainee's due process claim regarding denial of medical care); *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) ("The rights of one who has not been convicted [including any right to medical care] are protected by the Due Process Clause."); *Rasmussen v. City of New York*, __ F. Supp. 2d. __, No. 10 Civ. 1088(BMC), 2011 U.S. Dist. LEXIS 10089, at * 31-32, 2011 WL 477713, at * 10 (E.D.N.Y. Feb. 2, 2011) (analyzing arrestee's claim that officers denied her medical care under Due Process Clause, using deliberate indifference test).

The parties disagree about whether or not the complaint properly asserts claims under the

Due Process Clause.  (Dkt. No. 131-2 ¶ 2; Dkt. No. 138 ¶ 2.)  Plaintiff argues that the complaint "pleaded violations of the Fourteenth Amendment; therefore, [Plaintiff] pleaded a violation of his due process rights."  (Dkt. No. 138 ¶ 2.)  Defendants argue that Plaintiff has not asserted a due process claim because each cause of action refers to the Fourteenth Amendment's guarantee of "the equal protection of the laws."  (Dkt. No. 131-3 at 6.)

Courts must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest possible arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  This requirement applies to any pleading drafted by a *pro se* litigant and continues even if the litigant later retains counsel.  *See Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, 678 F. Supp. 2d 100, 104 (W.D.N.Y. 2010) ("the Court notes that plaintiff's complaint, even viewed liberally in light of her pro se status at the time it was filed . . .").  Therefore, I must liberally construe Plaintiff's complaint.

Construed as raising the strongest possible arguments it suggests, Plaintiff's complaint alleges that Defendants Knight and Galarneau violated his due process rights by acting with deliberate indifference to his serious medical needs.  Therefore, I reject Defendants' argument that the complaint does not include a due process claim.

Defendants have not advanced any argument or provided any evidence that they were not deliberately indifferent to Plaintiff's serious medical needs.  Therefore, this claim will proceed to trial on April 18, 2011.

## I.      Failure to Intervene Claim

Plaintiff claims that either Defendant Cross or Defendant Craft failed to intervene as the

other Defendants were using excessive force on Plaintiff.  (Dkt. No. 104 at 20.)[8] Such claims are

governed by the Due Process Clause.  *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-60

(S.D.N.Y. 2009) (officer's alleged failure to intervene to protect a pretrial detainee from harm

analyzed under Due Process Clause).  Defendants have not presented any arguments regarding

Plaintiff's failure-to-intervene claim, other than to argue that the complaint does not assert a due

process cause of action.  As discussed above, the complaint when liberally construed includes a

due process claim.  Therefore, this claim will proceed to trial.

### J.      Monell Claims

In his prayer for relief, Plaintiff alleges that Defendants Knight, Galarneau, LaValley,

Cross, and Craft would not have used the allegedly excessive force "had they been properly

trained."  (Dkt. No. 104 at 23-26.)  Liberally construed, the complaint thus includes a failure-to-

train cause of action against the New York State Police[9] and the Lewis County Sheriff's

Department[10].

Defendants move for summary judgment of this claim.  (Dkt. No. 131-3 at 13-15; Dkt.

No. 132-2 at 22.)  Plaintiff's brief does not address this argument.  (Dkt. No. 136.)

Regarding the New York State Police, Plaintiff's claim is barred both by the Eleventh

---

[8]      I note again that the complaint and Plaintiff's affidavit in opposition to the motions for summary judgment differ regarding this incident, reversing the identities of Defendants Cross and Craft.  (Dkt. NO. 137 ¶¶ 21-27; Dkt. No. 104 at 7, 20.)

[9]      The complaint lists "New York State Police, Troop D, Lowville" as a defendant in the caption, but not in the list of parties.  (Dkt. No. 104 at 1-3.)

[10]      The complaint does not name the Lewis County Sheriff's Department as a defendant in either the caption or the list of parties, but does request "punitive and monetary damages . . . from Defendant, the Lewis County Sheriff Department."  (Dkt. No. 104 at 24-25.)

Amendment and by the language of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989). Therefore, I grant Defendants' motions for summary judgment dismissing any claims against the New York State Police.

Regarding the Lewis County Sheriff's Department, a "municipality or other local government may be liable [under § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, __ S.Ct. __, 2011 WL 119022, at *6 (Mar. 29, 2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). A local government entity's alleged failure to train its employees creates liability under § 1983 only "[i]n limited circumstances." *Id*. Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. at *7. The "stringent standard" of "deliberate indifference" applies to failure-to-train claims. *Id*. In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes . . . employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id*. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at *8 (citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)).

Here, each of the County Defendants has filed a declaration describing the training they received regarding the appropriate use of force. (Dkt. No. 131-2 ¶ 41-43.) In his opposition to Defendants' statement of facts, Plaintiff "disputes" that Defendants received proper training. (Dkt. No. ¶¶ 41-43.) However, the only evidence Plaintiff cites for this proposition is his own complaint. *Id*. Plaintiff has not set forth any basis of personal knowledge regarding the officers'

training.  Therefore, Plaintiff has not raised a triable issue of fact.  Accordingly, I grant the

County Defendants' motions for summary judgment dismissing the failure-to-train claim against

the Lewis County Sheriff's Department.

### K.        Claims Against Defendant Tabolt

The complaint appears to assert a failure-to-train claim against Defendant L. Michael

Talbot.  (Dkt. No. 104 at 24-25.)  The County Defendants move for summary judgment of this

claim.  (Dkt. No. 131-3 at 16-17.)  Plaintiff's brief does not address this argument.  (Dkt. No.

136.)

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the unlawful conduct and the defendant.  *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere

"linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d

Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory

personnel may be considered "personally involved" if they (1) directly participated in the

violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) had

been grossly negligent in managing subordinates who caused the violation, or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[11]

Here, Defendants have presented the facially meritorious argument, based on the

declaration of Defendant Tabolt, that none of the *Colon* categories applies.  (Dkt. No. 131-7.)

Plaintiff has not raised a triable issue of fact.  Therefore, I grant the motion for summary

judgment and dismiss all claims against Defendant Tabolt.

**ACCORDINGLY**, it is

**ORDERED** that the motions for summary judgment (Dkt. Nos. 131 and 132) are

**GRANTED IN PART AND DENIED IN PART**.  The following claims are dismissed: (1) all

Eighth Amendment claims; (2) all equal protection claims; (3) all hate crime claims; (4) the

Fourth Amendment claim regarding Defendants' entry into Plaintiff's house; (5) all false arrest

claims; (6) all claims against the New York State Police; (7) all claims against the Lewis County

Sheriff's Department; and (8) all claims against Defendant Tabolt.  The following claims will

proceed to trial on April 18, 2011: (1) the Fourth Amendment claim regarding the post-arrest

search of Plaintiff's bedroom; (2) the excessive force claims;  (3) the due process claims against

---

[11]      In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme
Court ruled that where the underlying constitutional claim is a claim of intentional
discrimination, a supervisory official's liability must be judged by the official's purpose rather
than the official's knowledge of subordinates' actions or policies.  The Second Circuit has not yet
issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the
Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v.
United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for
the purposes of these motions that *Colon* remains good law.

Defendants Knight and Galarneau for deliberate indifference to Plaintiff's serious medical needs;

and (4) the due process failure-to-intervene claim against Defendant Cross or Craft.


Dated: April 1, 2011
      Syracuse, New York

                                        George H. Lowe
                                        United States Magistrate Judge